# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| JARROD MCKINNEY, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 2:21-cv-00212 |
| THOMAS J. VILSACK, in his official capacity | § | |
| as U.S. Secretary of Agriculture; ZACH | § | |
| DUCHENEAUX, in his official capacity as | § | |
| Administrator, Farm Service Agency, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ ii
INTRODUCTION .........................................................................................................1
JURISDICTION AND VENUE .....................................................................................2
PARTIES .......................................................................................................................3
GENERAL ALLEGATIONS .........................................................................................4
    *Section 1005 of the American Rescue Plan Act of 2021* ........................................4
    *Statutory Purpose* ..................................................................................................6
    *Past Efforts to Remedy Discrimination* .................................................................9
    *Implementation of Section 1005* ..........................................................................11
    *Application of Section 1005 to Mr. McKinney* ......................................................13
COUNT I: VIOLATION OF THE FIFTH AMENDMENT TO THE UNITED STATES
CONSTITUTION .........................................................................................................13
COUNT II: VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT ..............15
PRAYER FOR RELIEF ................................................................................................16

# TABLE OF AUTHORITIES

**CASES**

*Adarand Constructors, Inc. v. Pena*, 515 U.S. 200 (1995)...................................1, 14

*Bolling v. Sharpe*, 347 U.S. 497 (1954).....................................................14

*In re Black Farmers Discrimination Litig.*,
    No. 08-0511 (D.D.C. 2011)..............................................................10

*Keepseagle v. Veneman*, Order, No. 99-cv-3119
    (D.D.C. Apr. 28, 2011)....................................................................10

*Parents Involved in Community Schools v. Seattle Sch. Dist. No. 1*,
    551 U.S. 701 (2007) ........................................................................14

**CONSTITUTION**

U.S. Const. amend. V.........................................................................13

**STATUTES**

Agricultural Improvement Act of 2018, Pub. L. No. 115-334,
    132 Stat. 4490 (2018)........................................................................9

American Rescue Plan Act of 2021, Pub. L. No. 117-2 (2021) ......................... *passim*

Food, Agriculture, Conservation, and Trade Act of 1990,
    7 U.S.C. § 2279...............................................................................5

Food, Agriculture, Conservation, and Trade Act of 1990, Pub. L. No. 101-624
    § 2501 .............................................................................................9

5 U.S.C. § 702..................................................................................2

5 U.S.C. § 704..............................................................................15–16

5 U.S.C. § 706..................................................................................16

28 U.S.C. § 1331...............................................................................2

28 U.S.C. § 1391.............................................................................2–3

28 U.S.C. § 2201...............................................................................2

28 U.S.C. § 2202...............................................................................2

**BILLS**

Emergency Relief for Farmers of Color Act of 2021, S. 278,
    117th Cong. (2021) ......................................................................6–7

**REGULATIONS**

7 C.F.R. § 760..................................................................................5

7 C.F.R. § 1410................................................................................6

**OTHER AUTHORITY**

*American Rescue Plan Debt Payments,* U.S. DEP'T AGRIC.,
https://www.farmers.gov/americanrescueplan..........................................11

*American Rescue Plan Debt Payments FAQ*, U.S. DEP'T AGRIC.,
    https://www.farmers.gov/americanrescueplan/arp-faq
    (last updated May 21, 2021) ..................................................................................5

Clayton, Chris, *Repaying FSA Loan Debt for SDA Farmers*, PROGRESSIVE FARMER
    (May 13, 20211), https://www.dtnpf.com/agriculture/web/ag/news/farm-
    life/article/2021/05/13/usda-still-working-loan-payments ......................................8

Ducheneaux, Zach, *American Rescue Plan Socially Disadvantaged Farmer Debt
    Payments*, U.S. DEP'T AGRIC. (Mar. 26, 2021),
    https://www.farmers.gov/connect/blog/loans-and-grants/american-rescue-plan-
    socially-disadvantaged-farmer-debt-payments ......................................................7

*Statement from Agriculture Secretary Tom Vilsak on Congressional Passage of the
    American Rescue Plan Act*, U.S. DEP'T AGRIC. (Mar. 10, 2021),
    https://www.usda.gov/media/press-releases/2021/03/10/statement-agriculture-
    secretary-tom-vilsack-congressional-passage ..........................................................7

U.S. DEP'T OF AGRIC., Socially Disadvantaged Farmers and Ranchers,
    https://www.usda.gov/partnerships/socially-disadvantaged-
    farmers-and-ranchers ..............................................................................................9

USDA, American Rescue Plan Debt Payments,
    https://www.farmers.gov/sites/default/files/2021-05/american-rescue-plan-
    timeline-graphic3.pdf ............................................................................................12

USDA Form 2047 Customer Data Worksheet,
    https://www.farmers.gov/sites/default/files/
    documents/AD2047-01192021.pdf........................................................................12

**INTRODUCTION**

1.     The Constitution's promise of equal justice under the law is that the government will treat people as individuals, not simply as members of their racial group. "In the eyes of government, we are just one race here. It is American." *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 239 (1995) (Scalia, J., concurring). All Americans are entitled to equal treatment regardless of color. Plaintiff Jarrod McKinney brings this lawsuit to challenge a law that distributes benefits and burdens on the basis of race in violation of the Fifth Amendment to the Constitution.

2.     The American Rescue Plan Act of 2021, which allows the federal government to distribute 1.9 trillion dollars in federal funds, was signed into law on March 11, 2021. Section 1005 of the Act directs the United States Secretary of Agriculture to "provide a payment in an amount up to 120 percent of the outstanding indebtedness of each socially disadvantaged farmer or rancher as of January 1, 2021."

3.     Under Section 1005, social disadvantage does not turn on the individual characteristics of any farmer or rancher. Section 1005 assumes farmers and ranchers are socially disadvantaged for no other reason than their membership in a racial group. By contrast, Section 1005 categorically excludes other farmers and ranchers from loan assistance because they do not belong in a "socially disadvantaged racial group." Farmers and ranchers who are Black, American Indian/Alaskan Native, Hispanic, Asian, and Hawaiian/Pacific Islander are eligible for loan assistance, regardless of whether they have suffered any racial discrimination in obtaining farm loans, farming, or elsewhere and

regardless of their present economic circumstances. Farmers and ranchers who are white are ineligible for loan assistance, regardless of their individual circumstances.

4.      Mr. McKinney is a white farmer within this district. Like many other farmers, he has suffered economic harm as a result of the Coronavirus pandemic. He holds an eligible farm loan under Section 1005. Mr. McKinney would be eligible for assistance on these loans under Section 1005 if he identified as a member of any other racial group. But because he identifies as white, Mr. McKinney is categorically excluded from loan assistance.

5.      Section 1005 excludes Mr. McKinney from the loan assistance program because of his race. USDA has already started forgiving farm loans pursuant to Section 1005. Absent an injunction, USDA will use racial classifications to distribute more than 2 billion dollars to farmers and ranchers with farm loans. Mr. McKinney brings this lawsuit to eliminate Section 1005's race-based preferences and to restore the promise of equal treatment under the law.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. This action arises directly under the Due Process Clause of the Fifth Amendment. Mr. McKinney also brings this claim under 5 U.S.C. § 702.

7.      The Court has authority to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

8.      Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district and a substantial

part of the property that is the subject of the action is situated in this district. Venue is also proper under 28 U.S.C § 1391(e)(1)(B) because the Defendants are officers, employees, and agencies of the United States and a substantial part of the events or omissions giving rise to the claims occurred in this district and a substantial part of property that is the subject of the action is situated in this district.

## PARTIES

*Plaintiff*

9.      Mr. McKinney is a farmer in Naples, Texas. Mr. McKinney raises 60 pairs of cattle, and he works on his farm every day from 5:00 p.m. to 10:00 p.m. after he finishes his job at an insurance agency. Mr. McKinney holds a qualifying farm loan under Section 1005. Mr. McKinney is white. But for his race, Mr. McKinney would be eligible for loan assistance under Section 1005.

*Defendants*

10.      Defendant Thomas J. Vilsack is the United States Secretary of Agriculture. The Secretary of Agriculture leads the United States Department of Agriculture (USDA), which includes the Farm Service Agency. Section 1005 appropriates to the Secretary of Agriculture "for fiscal year 2021, out of amounts in the Treasury not otherwise appropriated, such sums as may be necessary, to remain available until expended, for the cost of loan modifications and payments under this section." Section 1005 also provides that the Secretary of Agriculture "shall provide a payment" to socially disadvantaged farmers or ranchers on qualifying farm loans. Mr. Vilsack is sued only in his official capacity.

11. Defendant Zach Ducheneaux is the administrator of USDA's Farm Service Agency (FSA). The administrator is the head of FSA. FSA offers loans to farmers and ranchers, including farm loans as defined in Section 1005. Mr. Ducheneaux is sued only in his official capacity.

## GENERAL ALLEGATIONS

*Section 1005 of the American Rescue Plan Act of 2021*

12. The American Rescue Plan Act of 2021 was signed into law on March 11, 2021.

13. Section 1005 of the Act is entitled "Farm Loan Assistance for Socially Disadvantaged Farmers and Ranchers."

14. Section 1005 appropriates to the Secretary of Agriculture, "out of amounts in the Treasury not otherwise appropriated, such sums as may be necessary, to remain available until expended, for the cost of loan modifications and payments under this section." § 1005(a)(1).[1]

15. Section 1005 directs the Secretary of Agriculture to "provide a payment in an amount up to 120 percent of the outstanding indebtedness of each socially disadvantaged farmer or rancher as of January 1, 2021, to pay off the loan directly or to the socially disadvantaged farmer or rancher (or a combination of both), on each (A) direct farm loan made by the Secretary to the socially disadvantaged farmer or rancher; and (B) farm loan

---

[1] Unless otherwise indicated, all statutory references are to the American Rescue Plan Act of 2021, H.R. 1319.

guaranteed by the Secretary the borrower of which is the socially disadvantaged farmer or rancher." § 1005(a)(2).

16.     Section 1005 defines a farm loan as "a loan administered by the Farm Service Agency under subtitle A, B, or C of the Consolidated Farm and Rural Development Act (7 U.S.C. 1922 et seq.)" or "a Commodity Credit Corporation Farm Storage Facility Loan." § 1005(b)(1).

17.     Farmers and ranchers that do not qualify as "socially disadvantaged farmers and ranchers" are ineligible for farm loan assistance under Section 1005. By contrast, the Secretary must provide loan assistance to socially disadvantaged farmers and ranchers with qualifying loans under Section 1005. § 1005(a)(2).

18.     Section 1005 specifies that "the term 'socially disadvantaged farmer or rancher' has the meaning given the term in section 2501(a) of the Food, Agriculture, Conservation, and Trade Act of 1990 (7 U.S.C. § 2279(a))." § 1005(b)(3). That law defines "socially disadvantaged farmer or rancher" as "a farmer or rancher who is a member of a socially disadvantaged group." 7 U.S.C. § 2279(a). According to USDA, for purposes of Section 1005, socially disadvantaged groups are: Black, American Indian/Alaska Native, Hispanic, Asian, and Hawaiian/Pacific Islander.[2] This definition is consistent with USDA regulations defining socially disadvantaged groups. *See, e.g.*, 7 C.F.R. § 760.107(b)(1) ("socially disadvantaged group" is limited to American Indians/Alaskan natives, Asian-Americans, Blacks, Hawaiians/Pacific Islanders, and Hispanics); *id.* § 1410.2(b) ("Socially

---

[2] *American Rescue Plan Debt Payments FAQ*, U.S. DEP'T AGRIC., https://www.farmers.gov/americanrescueplan/arp-faq (last updated May 21, 2021).

disadvantaged groups include the following and no others unless approved in writing . . . : (i) American Indians or Alaskan Natives; (ii) Asians or Asian-Americans; (iii) Blacks or African Americans; (iv) Hispanics; and (v) Native Hawaiians or other Pacific Islanders.").

*Statutory Purpose*

19.     The 242-page American Rescue Plan bill did not include any congressional findings or statement of legislative purpose related to Section 1005.

20.     Section 1005 is similar to Sections 3 and 4 of Senate Bill 278, proposed by Senator Warnock on February 8, 2021. The proposed bill is also known as the "Emergency Relief for Farmers of Color Act of 2021." SB 278 § 1.

21.     The stated purpose of Senate Bill 278 was "to address the historical discrimination against socially disadvantaged farmers and ranchers and address issues relating to the Coronavirus Disease 2019 (COVID–19)." SB 278 § 4(a).

22.     The proposed congressional findings in Section 2 of Senate Bill 278 did not include any findings of discrimination specific to Asian American farmers or ranchers.

23.     The proposed findings in Section 2 of Senate Bill 278 did not include any findings of discrimination specific to Hawaiian or Pacific Islander farmers or ranchers.

24.     The proposed findings in Section 2 of Senate Bill 278 did not include any finding that farmers and ranchers who suffered economic losses as a result of the Coronavirus Disease were "socially disadvantaged" or that socially disadvantaged farmers or ranchers were unable to access other Coronavirus-related relief funds.

25.     The proposed congressional findings in Section 2 of Senate Bill 278 assert that "numerous reports over 60 years have shown a consistent pattern of discrimination at

the Department of Agriculture against Black farmers, Indigenous farmers, and farmers of color."

26.     On March 10, 2021, Defendant Vilsack issued a statement on passage of the American Rescue Plan Act by the U.S. Congress.[3] Defendant Vilsack stated that the "American Rescue Plan provides historic debt relief to Black, Indigenous, Hispanic, and other farmers of color who for generations have struggled to fully succeed due to systemic discrimination and a cycle of debt."

27.     On March 25, 2021, Defendant Vilsack provided written testimony to Congress. Referring to the American Rescue Plan Act, Mr. Vilsack explained that the "law provides funding to address longstanding racial equity issues within the Department and across agriculture." Mr. Vilsack added that the law "provides debt relief for socially disadvantaged farmers and ranchers to respond to the cumulative impacts of systemic discrimination and barriers to access that have created a cycle of debt."

28.     On March 26, 2021, Defendant Ducheneaux published a blog post entitled "American Rescue Plan Socially Disadvantaged Farmer Debt Payments."[4]

29.     Defendant Ducheneaux's blog post stated that "USDA recognizes that socially disadvantaged farmers and ranchers have faced systemic discrimination with

---

[3] *Statement from Agriculture Secretary Tom Vilsack on Congressional Passage of the American Rescue Plan Act*, U.S. DEP'T AGRIC. (Mar. 10, 2021), https://www.usda.gov/media/press-releases/2021/03/10/statement-agriculture-secretary-tom-vilsack-congressional-passage.

[4] Zach Ducheneaux, *American Rescue Plan Socially Disadvantaged Farmer Debt Payments*, U.S. DEP'T AGRIC. (Mar. 26, 2021), https://www.farmers.gov/connect/blog/loans-and-grants/american-rescue-plan-socially-disadvantaged-farmer-debt-payments

cumulative effects that have, among other consequences, led to a substantial loss in the number of socially disadvantaged producers, reduced the amount of farmland they control, and contributed to a cycle of debt that was exacerbated during the COVID-19 pandemic." Ducheneaux, *supra*. The post also stated that to "address these systemic challenges, the American Rescue Plan Act of 2021 provides historic debt relief to socially disadvantaged producers including Black/African American, American Indian or Alaskan native, Hispanic or Latino, and Asian American or Pacific Islander." *Id.*

30.     Defendant Ducheneaux's blog post stated that "Producers who have worked with USDA's Farm Service Agency previously may have their ethnicity and race on file. A borrower, including those with guaranteed loans, can contact their local USDA Service Center to verify, update or submit a new ethnicity and race designation using the AD-2047." *Id.* Defendant Ducheneaux and Dewayne Goldmon, a senior adviser on racial equity to the agriculture secretary, stated that socially disadvantaged farmers and ranchers do not have to apply for loan assistance under Section 1005. Mr. Goldmon stated that "AD 2047 is the form that will qualify borrowers for this debt relief. And I cannot emphasize the importance enough of having that form on file." Chris Clayton, *Repaying FSA Loan Debt for SDA Farmers*, PROGRESSIVE FARMER (May 13, 2021), https://www.dtnpf.com/agriculture/web/ag/news/farm-life/article/2021/05/13/usda-still-working-loan-payments. In May 2021, USDA sent a letter to farmers and ranchers who have not designated details about their demographic information, including their "race and ethnicity data." The letter stated that "Section 1005 provides benefits specifically for socially disadvantaged farmers and ranchers." It explained that the

"definition includes borrowers who are American Indian, Alaskan Native, Asian, Black, African American, Native Hawaiian, or Pacific Islander by race and/or Hispanic or Latino by ethnicity as noted in FSA records."

*Past Efforts to Remedy Discrimination*

31.     There has been an extensive federal response to allegations of historical loan discrimination by USDA.

32.     The 1990 Farm Bill established the Outreach and Assistance for Socially Disadvantaged Farmers and Ranchers and Veteran Farmers and Ranchers Program ("2501 Program"). Pub. L. No. 101-624, § 2501. As USDA's website says, the 2501 Program is intended to "provide outreach and technical assistance for underserved farmers, ranchers, and foresters, in owning and operating sustainable farms and ranches while increasing their participation in USDA programs and services."[5]

33.     "Since 1994, the 2501 Program has awarded 533 grants totaling more than $138 million." *Id.* As USDA's website proclaims, "This funding has helped reach socially disadvantaged agricultural producers – farmers and ranchers who have experienced barriers to service due to racial or ethnic prejudice." *Id.* The 2018 Farm Bill also extended and increased funding for the 2501 Program. *See* Agricultural Improvement Act of 2018, Pub. L. No. 115-334, 132 Stat. 4490.

34.     Over a decade ago, a series of class action lawsuits alleging discrimination by USDA in lending to minority farmers and ranchers resulted in payments to farmers and

---

[5] U.S. DEP'T OF AGRIC., Socially Disadvantaged Farmers and Ranchers, https://www.usda.gov/partnerships/socially-disadvantaged-farmers-and-ranchers

ranchers affected by racial discrimination. In the *Pigford* litigation, USDA paid out around $1 billion to a class of approximately 23,000 Black farmers under the provisions of a consent decree.

35.     A subsequent class action settlement provided relief for Black farmers who were too late to file claims under *Pigford*. *See In re Black Farmers Discrimination Litig.*, No. 08-0511 (D.D.C. 2011).

36.     Similarly, in *Keepseagle v. Veneman*, a court approved a class action settlement in a case brought by Native American farmers and ranchers. Order, No. 99-cv-3119 (D.D.C. Apr. 28, 2011).

37.     In 2011, the Department of Justice and USDA announced the establishment of a process to resolve the claims of women and Hispanic farmers and ranchers who asserted that they were discriminated against when seeking USDA farm loans.

38.     In 1998, Congress suspended application of the two-year statute of limitations for Equal Credit Opportunity Claims, allowing discrimination claimants to qualify for payments under these settlements based on even decades-old instances of discrimination.

39.     In the 2008 farm bill, Congress stated that discrimination claims and class action lawsuits brought against USDA should be quickly and fairly resolved. Congress provided $100 million to help settle the *Pigford* discrimination claims and established a moratorium on acceleration and foreclosure proceedings by USDA against any farmer or rancher who filed a discrimination claim.

40.     Congress provided an additional $1.15 billion in funding in the Claims Resolution Act of 2010 to settle the additional claims in the *Pigford II* class action lawsuit. *See In re Black Farmers Discrimination Litig.*, 856 F. Supp. 2d 1 (D.D.C. 2011), *as amended* (Nov. 10, 2011) (approving settlement). All told, the federal government has paid out more than $2.4 billion in settlements to minority and female farmers.

*Implementation of Section 1005*

41.     USDA's website explains that the types of loans that are eligible for loan assistance under Section 1005 are those made directly by FSA, "including Farm Storage Facility Loans, Direct Farm Ownership Loans, Farm Operating Loans, including Microloans and Youth Loans, Emergency Loans, Conservation Loans, and Soil and Water Loans."[6] Also eligible for repayment are loans guaranteed by FSA and made by an approved lender, "including Farm Ownership Loans, Farm Operating Loans, and Conservation Loans."

42.     A USDA webpage entitled "American Rescue Plan Debt Payments FAQ" contains USDA's responses to frequently asked questions about Section 1005.[7] Question 1 asks: "Would you further explain the meaning of the 'socially disadvantaged farmer or rancher' designation?" The answer states that "Members of socially disadvantaged groups include, but are not limited to: American Indians or Alaskan Natives; Asians; Blacks or African Americans; Native Hawaiians or other Pacific Islanders; and Hispanics or

---

[6] American Rescue Plan Debt Payments, U.S. DEP'T AGRIC., https://www.farmers.gov/americanrescueplan
[7] *American Rescue Plan Debt Payments FAQ*, U.S. DEP'T AGRIC., https://www.farmers.gov/americanrescueplan/arp-faq (last updated May 21, 2021).

Latinos." *Id.* It further states that "The Secretary of Agriculture will determine on a case-by-case basis whether additional groups qualify under this definition in response to a written request with supporting explanation." *Id.*

43.     Another frequently asked question on the USDA webpage is: "Are there any similar programs for borrowers who are not socially disadvantaged based on race and ethnicity?" *Id.* The webpage states: "This American Rescue Plan program is for socially disadvantaged borrowers, as outlined in Question 1." *Id.*

44.     Loan assistance payments under Section 1005 will be made automatically to each farmer and rancher who has Form AD-2047[8] on file with USDA indicating that the farmer or rancher identifies as a member of a racial group other than "White." Beginning on May 24, 2021, FSA sent letters to each qualifying direct loan borrower detailing their FSA loan balances and the payment each borrower is entitled to receive under Section 1005.[9] USDA expects the issuance of these letters to continue throughout June.[10]

45.     Each direct borrower who receives a letter from FSA must sign and return the letter to FSA to receive his or her loan assistance. FSA will then process the signed letters. Payments are expected to issue within three weeks of FSA's receipt of a borrower's signed letter.

46.     FSA has already forgiven loan payments pursuant to Section 1005. Most of the farmers and ranchers who are eligible for loan assistance under Section 1005, and have

---

[8] Customer Data Worksheet, U.S. Dep't Agric., https://www.farmers.gov/sites/default/files/documents/AD2047-01192021.pdf
[9] American Rescue Plan Debt Payments, U.S. Dep't Agric., https://www.farmers.gov/sites/default/files/2021-05/american-rescue-plan-timeline-graphic3.pdf
[10] *Id.*

direct loans with FSA, will have their loans paid off by the end of July 2021 absent a court order to the contrary.

47.    Holders of loans guaranteed by FSA are also eligible for repayment, but the process for those loans will begin within a few months, likely resulting in loan repayments towards the end of 2021.

*Application of Section 1005 to Mr. McKinney*

48.    Mr. McKinney holds a farm loan that would be eligible for loan assistance under Section 1005 but for its "socially disadvantaged" provisions. Because Mr. McKinney is white, he is not considered to be a "socially disadvantaged farmer or rancher" under Section 1005. As a result, Mr. McKinney is ineligible for loan assistance.

49.    USDA has interpreted "socially disadvantaged" groups to mean American Indians or Alaskan Natives; Asians; Blacks or African Americans; Hispanics or Latinos; and Native Hawaiians or other Pacific Islanders. This is consistent with USDA's interpretation of "socially disadvantaged" for the past 20 years.

50.    Consistent with Section 1005, USDA cannot make a person who does not belong to a socially disadvantaged group eligible for loan assistance under the statute.

## COUNT I: VIOLATION OF THE FIFTH AMENDMENT
## TO THE UNITED STATES CONSTITUTION

51.    Mr. McKinney hereby incorporates the prior allegations of this complaint.

52.    The Due Process Clause of the Fifth Amendment provides, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. This clause contains an equal protection component applicable to the federal government. *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954). Thus, "all racial classifications,

imposed by whatever federal, state, or local governmental actor, must be analyzed by a reviewing court under strict scrutiny." *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995).

53. Section 1005 violates the equal protection component of the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

54. Section 1005 provides farm loan assistance on the basis of racial classifications. Farmers or ranchers who have farm loans and are Black, American Indian/Alaska Native, Hispanic, Asian, or Hawaiian/Pacific Islander are eligible for loan assistance. White farmers and ranchers with farm loans, as defined under Section 1005, are ineligible for loan assistance.

55. Because Section 1005 distributes benefits or burdens on the basis of racial classifications, it is subject to strict scrutiny. *See Parents Involved in Community Schools v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 720 (2007).

56. Strict scrutiny requires the government to show that its racial classifications (1) further a compelling governmental interest, and (2) are narrowly tailored to further that interest. *See Adarand Constructors*, 515 U.S. at 220.

57. Section 1005's racial classifications are not narrowly tailored to further a compelling governmental interest.

58. Section 1005 is not intended or designed to remedy specific instances of racial discrimination.

59. Section 1005 assumes that all individuals of "socially disadvantaged" racial groups have been subject to racial discrimination. Section 1005 directs the Secretary to

provide farm loan assistance to all socially disadvantaged farmers and ranchers with qualifying farm loans.

60.     Section 1005 does not limit farm loan assistance to only socially disadvantaged farmers and ranchers that have suffered racial discrimination, let alone racial discrimination in farming, or racial discrimination in obtaining farm loans.

61.     Section 1005 directs the Secretary to provide farm loan assistance to socially disadvantaged farmers and ranchers even if any past discrimination that they have suffered has already been remedied by the government.

62.     Mr. McKinney is not "socially disadvantaged" under Section 1005 because he is white. Section 1005 assumes that individuals who do not belong to a "socially disadvantaged" racial group are not otherwise disadvantaged apart from their race. Farmers and ranchers who do not belong in "socially disadvantaged" racial groups are categorically ineligible for loan assistance under Section 1005. Section 1005 does not provide farm loan assistance to any farmers and ranchers who are otherwise disadvantaged apart from their race.

### COUNT II: VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT
**(Not in accordance with the law – Due Process Clause of the Fifth Amendment)**

63.     Mr. McKinney incorporates paragraphs 1-50, and 52-62 herein.

64.     USDA's implementation of Section 1005's socially disadvantaged provisions is not "preliminary, procedural, or intermediate." 5 U.S.C. § 704.

65.     USDA, in accordance with Section 1005, excludes white farmers and ranchers from the category of "socially disadvantaged farmers and ranchers."

66.     The USDA did not take any additional action to include white farmers and ranchers in the category of "socially disadvantaged farmers and ranchers" prior to forgiving loans under Section 1005.

67.     USDA's implementation of Section 1005's socially disadvantaged provisions is reviewable under 5 U.S.C. § 704.

68.     The Administrative Procedure Act (APA) prohibits agency actions that are "not in accordance with law." 5 U.S.C. § 706(2)(A), and those contrary to a constitutional right, power, privilege, or immunity. 5 U.S.C. § 706(2)(B). As stated above, the "socially disadvantaged" provisions of Section 1005 violate the equal protection component of the Due Process Clause of the Fifth Amendment. Accordingly, USDA's implementation of Section 1005 violates the APA.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for relief as follows:

1.     A judgment declaring that the "socially disadvantaged" provisions of Section 1005 of the American Rescue Plan Act of 2021 violate the Fifth Amendment to the United States Constitution and are otherwise not in accordance with the law under the APA;

2.     Preliminary and permanent injunctions prohibiting Defendants from enforcing the "socially disadvantaged" provisions of Section 1005 of the American Rescue Plan Act of 2021 and opening eligibility for loan assistance to all farmers or ranchers with qualifying farm loans;

3. In the alternative, preliminary and permanent injunctions prohibiting Defendants from enforcing Section 1005 of the American Rescue Plan Act of 2021 in its entirety and enjoining Defendants from distributing loan assistance under Section 1005 to farmers and ranchers;

4. An award to Mr. McKinney of such costs and attorney fees as allowed by law;

5. An award to Mr. McKinney of $1.00 in nominal damages; and

6. Any other relief that the Court deems just and proper.

DATED: June 10, 2021.

Respectfully submitted:

PACIFIC LEGAL FOUNDATION

_s/ Joshua P. Thompson_____
Joshua P. Thompson (Lead Attorney)
Wencong Fa (Pro Hac Vice Pending)
Christopher M. Kieser (Pro Hac Vice Pending)
930 G Street
Sacramento, CA 95814
Telephone: (916) 419-7111
Fax: (916) 419-7747
Email: JThompson@pacificlegal.org
Email: WFa@pacificlegal.org
Email: CKieser@pacificlegal.org

Glenn E. Roper (Pro Hac Vice Pending)
1745 Shea Center Dr., Suite 400
Highlands Ranch CO 80129
Telephone: (916) 419-7111
Fax: (916) 419-7747
Email: GERoper@pacificlegal.org

*Counsel for Plaintiff Jarrod McKinney*