IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| JARROD MCKINNEY,<br><br>*Plaintiff*,<br><br>v.<br><br>THOMAS J. VILSACK, in his official capacity as Secretary of Agriculture, *et al.*,<br><br>*Defendants*. | No. 2:21-cv-00212-RWS |

## DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING RESOLUTION OF RELATED CLASS ACTION

For the reasons stated in the attachment memorandum, Defendants Thomas J. Vilsack, in his official capacity as Secretary of Agriculture, and Zach Ducheneaux, in his official capacity as Administrator of the Farm Service Agency (collectively, USDA or Defendants), hereby move to stay the proceedings in this case, including briefing on Plaintiff's motion for a preliminary injunction, pending resolution of proceedings in related litigation that has been certified as a class action under Federal Rule of Civil Procedure Rule 23(b)(2). Counsel for Defendants have conferred with counsel for Plaintiff, who indicate that Plaintiff opposes this request.

DATED: July 12, 2021

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

LESLEY FARBY
Assistant Branch Director
Civil Division, Federal Programs Branch

/s/ Michael F. Knapp
EMILY SUE NEWTON (VA Bar No. 80745)
Senior Trial Counsel
MICHAEL F. KNAPP (Cal. Bar No. 314104)
KYLA M. SNOW
GARY D. FELDON
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 514-2071 / Fax: (202) 616-8460
michael.f.knapp@usdoj.gov

*Counsel for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| JARROD MCKINNEY,<br><br>   *Plaintiff*,<br><br>v.<br><br>THOMAS J. VILSACK, in his official capacity as Secretary of Agriculture, *et al.*,<br><br>   *Defendants*. | No. 2:21-cv-00212-RWS |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO STAY PROCEEDINGS PENDING RESOLUTION OF RELATED CLASS ACTION**

  In March 2021, Congress enacted Section 1005 of the American Rescue Plan Act (ARPA), which authorizes funds to relieve the U.S. Department of Agriculture (USDA) debts held by certain socially disadvantaged farmers. Congress determined that this relief was necessary to remedy the lingering effects of decades of discrimination against minority farmers in the implementation of USDA farm loan programs, which effects were exacerbated by COVID-19 and the failure of prior relief to reach them. Plaintiff Jarrod McKinney filed this action to challenge USDA's implementation of Section 1005 on equal protection grounds, and he seeks a nationwide preliminary injunction against disbursement of Section 1005 funds. Pl.'s Mot. for Prelim. Inj., ECF No. 9. Plaintiff's lawsuit is not the only challenge to Section 1005. There are currently twelve such lawsuits pending before courts across the country, and multiple courts have already granted the preliminary relief Plaintiff seeks from this Court.

  Recent developments in the earliest-filed challenge to Section 1005 warrant a stay of this case. Specifically, on July 2, 2021, the Northern District of Texas certified two classes of farmers and ranchers bringing an equal protection challenge to Section 1005 like that Plaintiff brings here. *See* Order on Class Cert. & PI, *Miller v. Vilsack*, 4:21-cv-595 (N.D. Tex.) (attached as Ex. A). At the same

time, that court issued an injunction that (like those issued by other courts) prevents the Government from disbursing Section 1005 funds while the case is adjudicated on the merits. *Id.* Plaintiff is a member of the classes certified under Rule 23(b)(2) and Defendants will be bound by any relief granted to the classes with respect to Plaintiff should their equal protection claim prevail. Thus, continued adjudication of Plaintiff's claim in this Court, separate from the class to which he belongs, would be unnecessarily duplicative and risk inconsistent results. A stay, on the other hand, would not prejudice Plaintiff, who will be bound by and benefit from any judgment applicable to the classes, and in the meantime already "ha[s] the protection [he] seek[s]" in his preliminary-injunction motion, given the injunctions entered by other courts. Order 4, *Faust v. Vilsack,* 21-cv-548 (E.D. Wis.) (attached as Ex. B). A stay would also preserve judicial resources and prevent hardship to Defendants, who would otherwise be required to continue defending against duplicative claims in separate courts, many of which are being brought by this Plaintiff's counsel. Finally, the requested stay would be consistent with those granted by other courts in similar circumstances.

For these reasons, this Court should stay proceedings in this case until final resolution of the class challenge to Section 1005 in *Miller.*[1]

## BACKGROUND

On June 10, 2021, Plaintiff filed this action, alleging that USDA's implementation of ARPA Section 1005, which authorizes debt relief to socially disadvantaged farmers or ranchers, violates his right to equal protection. *See* Compl., ECF No. 1. Plaintiff later moved for a preliminary injunction. This is one of twelve cases, brought in courts around the country, challenging the implementation of Section 1005 on equal protection grounds. *See Miller*, 4:21-cv-595; *Wynn v. Vilsack*, 3:21-cv-514 (M.D. Fla.); *Faust*, 1:21-cv-548; *Carpenter v. Vilsack*, 21-cv-103-F (D. Wyo.); *Holman v. Vilsack*, 1:21-cv-1085 (W.D. Tenn.); *Kent v. Vilsack*, 3:21-cv-540 (S.D. Ill.); *Joyner v. Vilsack*, 1:21-cv-1089 (W.D. Tenn.); *Dunlap v. Vilsack*, 2:21-cv-942 (D. Or.); *Rogers v. Vilsack*, 1:21-cv-1779 (D. Colo.); *Tiegs v. Vilsack*, 3:21-

---

[1] Defendants plan to file stay motions in all of the other related cases challenging Section 1005.

cv-147 (D.N.D.); *Nuest v. Vilsack*, 21-cv-1572 (D. Minn.).[2] *Miller*, the first-filed case, commenced on April 26, 2021. Compl., *Miller*, ECF No. 1.

Several weeks after *Miller* was filed, plaintiffs in *Faust* moved for a temporary restraining order (TRO) and preliminary injunction. Op. & Order, *Faust*, ECF No. 21. On June 10, the *Faust* court granted the TRO, enjoining Defendants from disbursing Section 1005 funds "until the Court rules on Plaintiffs' motion for a preliminary injunction." *Id.* at 10. In the meantime, the plaintiff in *Wynn* moved for a preliminary injunction, which the court granted on June 23. Order, *Wynn*, ECF No. 41. The nationwide preliminary injunction in *Wynn* prohibits Defendants "from issuing any payments, loan assistance, or debt relief pursuant to Section 1005(a)(2) . . . until further order from the Court," but does "not enjoin Defendants from continuing to prepare to effectuate the relief under Section 1005 in the event it is ultimately found to be constitutionally permissible." *Id.* at 48-49, n.19. After *Wynn* issued the nationwide preliminary injunction, the *Faust* court issued an order dissolving the TRO and staying the motion for a preliminary injunction, finding that the plaintiffs could not establish irreparable harm. Order 3, *Faust*, ECF No. 49. The court concluded that because "[t]he *Wynn* court issued the same nationwide injunction" that the plaintiffs' asked the *Faust* court to issue, they had already received "the protection they seek," and so "[n]o purpose would be served by th[e] Court issuing another order granting (or denying) the same nationwide relief." *Id.* at 3-4. Shortly thereafter, the Western District of Tennessee issued a nationwide injunction identical to the one issued in *Wynn*. *See* Order, *Holman*, ECF No. 41.

While the preliminary injunction motions in *Faust* and *Wynn* were pending, the plaintiffs in *Miller* moved for class certification, Br. in Supp. of Mot. for Class Cert., *Miller*, ECF No. 13, and for a

---

[2] Defendants have not yet been served in all of these cases, and the Government does not waive any objections regarding service.

preliminary injunction, Br. in Supp. of Mot. for PI, *id.*, ECF No. 18.[3] And on June 30, 2021, the *Miller* court granted both motions. Order on Class Cert. & PI, *id.* Adopting the plaintiffs' proposed class definitions in full, the court certified the following two classes under Rule 23(b)(2):

1. All farmers and ranchers in the United States who are encountering, or who will encounter, racial discrimination from the United States Department of Agriculture on account of section 1005 of the American Rescue Plan Act.

2. All farmers and ranchers in the United States who are currently excluded from the definition of "socially disadvantaged farmer or rancher," as defined in 7 U.S.C. § 2279(a)(5)–(6)[4] and as interpreted by the Department of Agriculture.

*Id.* at 5-6. Although two classes were certified, the plaintiffs and the Court emphasized that the classes were specific to the plaintiff's challenge to Section 1005. *Id.* at 13; Class Cert. Reply 1, ECF No. 41 ("The plaintiffs—at this point in the litigation—are seeking classwide relief *only* against the continued enforcement of the racial exclusions in section 1005 of the American Rescue Plan Act."); *id.* at 4 ("These classes are being proposed for the purpose of obtaining preliminary classwide relief against the racial exclusions in section 1005.").

Additionally, in granting the plaintiffs' preliminary-injunction motion, the court enjoined Defendants

> from discriminating on account of race or ethnicity in administering section 1005 of [ARPA] for any applicant who is a member of the Certified Classes. This prohibition encompasses: (a) considering or using an applicant Class Member's race or ethnicity as a criterion in determining whether that applicant will obtain loan assistance, forgiveness, or payments; and (b) considering or using any criterion that is intended to serve as a proxy for race or ethnicity in determining whether an applicant Class member will obtain loan assistance, forgiveness, or payments.

---

[3] Although the plaintiffs in *Miller* assert equal protection, Title VI, and statutory construction claims, their preliminary injunction and class certification motions relied solely on their equal protection challenge to Section 1005. *See* Br. in Supp. of Mot. for Class Cert. 4.
[4] Section 1005 incorporates the definition of "socially disadvantaged farmer or rancher" set out in 7 U.S.C. § 2279(a).

4

Order on Class Cert. & PI 22-23, *id.* Like the nationwide injunction in *Wynn*, the court's injunction in *Miller* precludes disbursement of Section 1005 funds while the case is adjudicated on the merits.[5] The *Miller* court ordered the parties to submit a proposed schedule for resolving the case on the merits by July 16.[6]

## STANDARD OF REVIEW

"The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). That power applies "especially in cases of extraordinary public moment," when "a plaintiff may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted." *Id.* at 707 (modifications omitted).

When determining whether to grant a stay, courts "must weigh competing interests and maintain an even balance." *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983). To that end, courts generally consider potential prejudice to the non-movant, hardship to the movant if required to go forward, and "the orderly course of justice," including preservation of the parties' and the courts' resources. *Fishman Jackson PLLC v. Israely*, 180 F. Supp. 3d 476, 489 (N.D. Tex. 2016); *ZeniMax Media Inc. v. Samsung Elecs. Co., Ltd.*, 2017 WL 4805524, at *4 (N.D. Tex. Oct. 25, 2017). A stay must not be "immoderate," meaning it must specifically define its duration so as to not be "indefinite" in scope. *Fishman Jackson*, 180 F. Supp. 3d at 489.

---

[5] On July 2, Defendants notified the court that it understood this injunction to be consistent with those entered in *Faust* and *Wynn*, in that it prohibits Defendants from issuing payments under Section 1005 but does not prohibit Defendants from "taking preparatory steps, including sending offer letters to eligible borrowers, to enable prompt payments if later permitted." Notice 2, *id.*, ECF No. 61. Per order of the court, the plaintiffs responded to Defendants' Notice on July 5. Resp., *id.*, ECF No. 63. Defendants filed a reply on July 6. *See* Reply, ECF No. 65.

[6] On June 29, Defendants filed a partial answer and partial motion to dismiss the plaintiffs' non-Section 1005 claims. *See* ECF Nos. 49, 51.

The interests of judicial economy carry significant weight, particularly when considering whether to stay one of multiple cases involving the same parties and issues. "A stay pending the outcome of litigation between the same parties involving the same or controlling issues is an acceptable means of avoiding unnecessary duplication of judicial machinery." *ACF Indus., Inc. v. Guinn*, 384 F.2d 15, 19 (5th Cir. 1967). "The Supreme Court has repeatedly observed that under the doctrine of comity, when cases involving substantially overlapping issues are pending before two federal district courts, there is a strong preference to avoid duplicative litigation." *Parallel Networks Licensing, LLC v. Superior Turnkey Sols. Grp., Inc.*, 2020WL2098203, at *2 (E.D. Tex. May 1, 2020). "Allowing the same issue to be decided more than once wastes litigants' resources and adjudicators' time." *B&B Hardware, Inc. v. Hargus Indus., Inc.*, 575 U.S. 138, 140 (2015).

## **ARGUMENT**

The Court should stay the proceedings in this case until final resolution of the class challenge to Section 1005 in *Miller*.[7] All relevant factors support this proposed stay. Most significantly, a stay is in the interest of judicial economy: Because Plaintiff is a member of the classes challenging Section 1005 and will directly benefit from any relief granted in the classes' favor, staying this case would avoid unnecessarily duplicative litigation and potentially inconsistent results. Relatedly, a stay would not prejudice Plaintiff, who is already protected by multiple preliminary injunctions and who may receive all the relief he is entitled to upon final judgment of the *Miller* class action. On the other hand, continuing to adjudicate Plaintiff's claim in this Court and in *Miller* simultaneously would impose hardship on Defendants, who would be required to defend against identical claims in multiple courts at the same time—including in ten other courts around the country (with Plaintiff's counsel here

---

[7] Defendants have not appealed the order granting a preliminary injunction and certifying the classes in *Miller* but reserve their right to do so. If the classes in *Miller* are decertified for any reason, the parties can brief the Court on whether the stay should be lifted.

bringing five of those duplicative cases). Finally, courts regularly stay cases pending resolution of related class actions. This Court should do likewise.

## I.   A stay is in the interest of judicial economy.

First, a stay of these proceedings would promote judicial economy because resolution of the class challenge to Section 1005 in *Miller* is likely to have a substantial or controlling effect on Plaintiff's claim in this case. Plaintiff undisputedly falls within the definition of the classes certified by *Miller*: He is a farmer who alleges that he is being subjected to racial discrimination due to USDA's provision of Section 1005 debt relief to socially disadvantaged farmers, because the definition of "socially disadvantaged farmer or rancher" does not automatically include farmers like him who self-identify as white. The classes in *Miller* were certified under Rule 23(b)(2), which means that Plaintiff cannot opt out of any judgment applicable to the classes. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 361-63 (2011). Thus, any relief ordered in *Miller* will apply in the same way to Plaintiff as it does to all other class members. *Id.* at 361-62 (noting that the relief sought in a Rule 23(b)(2) class "perforce affect[s] the entire class at once"); *Juris v. Inamed Corp.*, 685 F.3d 1294, 1312 (11th Cir. 2012) ("Class action judgments will typically bind all members of the class."). Indeed, that relief will be *binding* on Plaintiff and would preclude him, like all other class members, from obtaining an alternative judgment in another proceeding. *Cooper v. Fed. Rsrv. Bank of Richmond,* 467 U.S. 867, 874 (1984).

Accordingly, permitting Plaintiff to continue litigating his claim in this Court, separate from the rest of the class to which he belongs, would create a risk of inconsistent results that could undermine the preclusive effect of a class-wide judgment and confuse Defendants' obligations to different class members. *See Dunn v. Air Line Pilots Ass'n*, 836 F. Supp. 1574, 1584 (S.D. Fla. 1993), *aff'd,* 193 F.3d 1185 (11th Cir. 1999) (noting that one consideration for granting a stay is the possibility of "avoid conflicting orders"). For instance, if the plaintiff class succeeds in its equal protection challenge to Section 1005 in *Miller* but Plaintiff loses his claim here (or vice versa),

7

Defendants would be subject to conflicting judgments concerning the constitutionality of Section 1005 and, importantly, their obligations toward this Plaintiff. Staying this case pending resolution of the class challenge to Section 1005 in *Miller* would promote judicial efficiency by avoiding this risk of such contradictory outcomes.

That *Miller* was certified as a class action after Plaintiff filed his case does not undermine the preclusive effect of any class-wide judgment or justify Plaintiff's continued litigation of his claim separately in this Court.[8] *Miller* was the first-filed case, which underscores the conclusion that a stay here is appropriate and in the interest of judicial economy. Under the first-filed rule, "when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Int'l Fid. Ins. Co. v. Sweet Little Mex. Corp.*, 665 F.3d 671, 677-78 (5th Cir. 2011) (citation omitted); *see also Sutter Corp. v. P&P Indus., Inc.*, 125 F.3d 914, 917 (5th Cir. 1997) ("The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." (citation omitted)).

The issues presented by the equal protection challenge to Section 1005 in *Miller* and this case are not only overlapping—they are identical. Indeed, because Plaintiff is a class member, *this Plaintiff's claim* is being simultaneously litigated in two courts. And, as Plaintiff and Defendants will both be bound by any class-wide judgment on Section 1005, litigating the cases separately does not benefit Plaintiff or serve judicial economy, but only burdens judicial resources at the risk of creating conflicting outcomes. Moreover, both cases are still in their early stages, with a proposed case schedule due in *Miller* by July 16. Thus, staying this case at this early stage of the proceedings would not cause unnecessary disruption to litigation of Plaintiff's claim, but would instead further promote efficient

---

[8] As explained below, courts often stay proceedings even while a motion for class certification is pending. *See infra* at 11 & n.8.

8

resolution of the Section 1005 claim before any case deadlines have passed in *Miller*. The Court should therefore stay this case pending resolution of the first-filed equal protection challenge to Section 1005 in *Miller*.

## II. A stay would not prejudice Plaintiff and would avoid hardship to the Government.

Additionally, and for the same reasons, staying this case pending resolution of the class challenge to Section 1005 in *Miller* would not prejudice Plaintiff. Again, the classes certified in *Miller* challenge the same agency action and seek the same relief. *Compare* Pls.' Br. in Supp. of Prelim. Inj. ECF No. 18, *Miller* (challenging the implementation of Section 1005 based on USDA's interpretation of "socially disadvantaged farmer or rancher" with reference to race), *with* Pl.'s Mot. for Prelim. Inj. 1, ECF No. 9 (same). Indeed, the *Miller* court has already ordered the relief that Plaintiff seeks in this case: a preliminary injunction prohibiting the Government from disbursing payments under Section 1005. *See* Order on Class Cert. & PI, *Miller*; *see also* Pl.'s Mot. for Prelim. Inj. 11-13. And because Defendants will be bound by a final judgment in the class action with respect to this Plaintiff, he is not harmed by a stay of his duplicative case.

Relatedly, a stay of the proceedings in this case would avoid hardship to the Government. Specifically, requiring the Defendants to defend Plaintiff's claim in this Court and the class action in *Miller* at the same time (along with all other pending cases), with the potential for different case schedules, would drain the courts' and the Government's resources without any apparent benefit to Plaintiff. Indeed, the burden on Defendants is already significant, given that there are currently eleven other substantively similar lawsuits pending around the country, with additional requests for preliminary injunctive relief pending in several of those cases. Counsel for Plaintiff here have filed nearly identical complaints in four other jurisdictions, two of which they filed after they had already

obtained the preliminary injunction in *Wynn*.[9] Counsel should not be permitted to continue to file and litigate duplicative lawsuits in multiple jurisdictions, especially where the preliminary relief they seek in those cases exactly duplicates the relief they obtained already from another court. Moreover, particularly given the importance of the issues at stake, the Government should not be compelled to defend multiple cases raising substantially similar claims on different schedules and potentially subject to different discovery obligations—all while simultaneously defending against duplicative requests for nationwide preliminary injunctions. *Cf. Clinton*, 520 U.S. at 707 (explaining that "especially in cases of extraordinary public moment, a plaintiff may be required to submit to delay" (modifications omitted)).

### III. Courts regularly stay cases pending resolution of related class actions.

Finally, a stay here would be consistent with other courts' recognition that a stay (or even dismissal) is generally warranted upon certification of a class of which the plaintiff is a member.[10] *See, e.g., Jiaming Hu v. U.S. Dep't of Homeland Sec.*, 4:17-cv-02363, 2018 WL 1251911, at *4 (E.D. Mo. Mar. 12, 2018) ("Since class members generally cannot relitigate issues raised in a class action after it has been resolved, a class member should not be able to prosecute a separate equitable action once his or her class has been certified." (internal quotation marks omitted) (citing circuit cases dismissing actions where the plaintiff was a member of certified class in another case)); *see also Mackey v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 112 F. App'x 89, 91 (2d Cir. 2004) (affirming dismissal without prejudice "based on the rule against duplicative litigation" where plaintiff's allegations "duplicated claims that had been included in separate class actions" against the defendant, and plaintiffs "were members of those classes"); *Aleman ex rel. Ryder Sys., Inc. v. Sancez*, 21-cv-20539, 2021 WL 917969, at *2 (S.D. Fla.

---

[9] See *Wynn*, 3:21-cv-514; *Kent*, 3:21-cv-540; *Dunlap*, 2:21-cv-942; *Tiegs*, 3:21-cv-147.
[10] Indeed, federal courts will regularly stay cases when a class certification motion is only pending, rather than already granted, in an earlier-filed related case. *See, e.g., Sanchez-Cobarrubias v. Bland*, CV609-005, 2011 WL 841082, at *1 (S.D. Ga. Mar. 7, 2011) (reciting case history); *Bargas v. Rite Aid Corp.*, CV1303865MWFJEMX, 2014 WL 12538151, at *3 (C.D. Cal. Oct. 21, 2014).

10

Mar. 10, 2021) (noting that "the Court entered an order staying proceedings" pending resolution of a related class action, "recognizing that the cases are related, and that the resolution of the issues raised in the Class Action will necessarily impact the proceedings in" the case); *Richard K. v. United Behavioral Health*, 18-cv-6318, 2019 WL 3083019, at *7 (S.D.N.Y. June 28, 2019), *report and recommendation adopted*, 18-cv-6318, 2019 WL 3080849 (S.D.N.Y. July 15, 2019) (explaining that stay and dismissal without prejudice "are routinely found appropriate where, as here, the claims made in an individual lawsuit overlap with the claims being pursued by a certified class of which the individual plaintiff is a member").

In such cases, courts have ordered a stay of the same scope Defendants seek here, that is, a stay of all proceedings until final resolution of a related class action. *See, e.g.*, *Gonzales v. Berryhill*, 18-cv-603, ECF No. 28 (D.N.M. Mar. 5, 2019) (staying proceedings until the district court in a related case "issues a decision on the forthcoming motion for class certification and, if a class is certified in [the related case], until the conclusion of all proceedings in [the related case], including any appeals.").

The First Circuit's decision in *Taunton Gardens Co. v. Hills* illustrates the propriety of a stay in circumstances strikingly similar to this case. 557 F.2d 877 (1st Cir. 1977). There, the plaintiffs challenged "the administration of a major federal program and the disbursement of a significant amount of federal money," and the case thus "present[ed] issues of 'public moment.'" *Id.* at 879. And there, much like here, the implementation of that federal program had spurred litigation "in more than ten district courts" around the country, and the Government was subject to multiple injunctions. *Id.* Moreover, like this case, a related action was certified as a class action. *See Taunton Gardens Co. v. Hills*, 421 F. Supp. 524, 526 (D. Mass. 1976). Although the plaintiffs in *Taunton Gardens* were not members of that class, the court noted that they challenged the same program and sought identical relief and, thus, that the class action determined the merits of the case. *Id.* Accordingly, the district court found it was in "the interest of justice" to stay all proceedings—including litigation of the pending motion

for preliminary injunction[11]—"pending entry of a final judgment in the class action case." *Id.* The First Circuit upheld the stay, also emphasizing that it was in the "public interest, the court's interest in efficient procedures, and the interest of justice" to stay the case and afford the Government "a reasonable opportunity to resolve its obligations in the national class action." 557 F.2d at 879. It also pointed out that the stay's duration, lasting until an appeal of the class action judgment was resolved, was reasonable. *Id.*

All of the factors considered by *Taunton Gardens* support a stay here: Plaintiff challenges a significant federal program presenting issues of "public moment," and undersigned counsel are defending against claims in twelve courts around the country. Additionally, the recently certified classes in *Miller* seek the same relief Plaintiff seeks in this case—and indeed, since Plaintiff is a member of those classes, resolution of the challenge to Section 1005 in *Miller*, and any relief granted by that court, will operate to protect Plaintiff together with all other class members. Finally, the scope of the stay requested here—until resolution of the class action—is the same as that approved in *Taunton Gardens* and other cases. There, as here, the "public interest, the court's interest in efficient procedures, and the interest of justice" support a stay of all procedures pending resolution of the class challenge to Section 1005 in *Miller*.

## **CONCLUSION**

For these reasons, the Court should stay proceedings in this case pending resolution of the class challenge to Section 1005 in *Miller*.

---

[11] The court also noted that granting the requested preliminary injunction "would be inconsistent with the granting of the stay which this Court has ruled appropriate herein." *Id.*

12

Dated: July 12, 2021　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　BRIAN M. BOYNTON
　　　　　　　　　　　　　　　　　　　Acting Assistant Attorney General

　　　　　　　　　　　　　　　　　　　LESLEY FARBY
　　　　　　　　　　　　　　　　　　　Assistant Branch Director
　　　　　　　　　　　　　　　　　　　Civil Division, Federal Programs Branch

　　　　　　　　　　　　　　　　　　　*/s/ Michael F. Knapp*
　　　　　　　　　　　　　　　　　　　EMILY SUE NEWTON (VA Bar No. 80745)
　　　　　　　　　　　　　　　　　　　Senior Trial Counsel
　　　　　　　　　　　　　　　　　　　MICHAEL F. KNAPP (Cal. Bar No. 314104)
　　　　　　　　　　　　　　　　　　　KYLA M. SNOW
　　　　　　　　　　　　　　　　　　　GARY D. FELDON
　　　　　　　　　　　　　　　　　　　Trial Attorneys
　　　　　　　　　　　　　　　　　　　United States Department of Justice
　　　　　　　　　　　　　　　　　　　Civil Division, Federal Programs Branch
　　　　　　　　　　　　　　　　　　　1100 L Street, NW
　　　　　　　　　　　　　　　　　　　Washington, D.C. 20005
　　　　　　　　　　　　　　　　　　　Tel: (202) 514-2071 / Fax: (202) 616-8460
　　　　　　　　　　　　　　　　　　　michael.f.knapp@usdoj.gov


　　　　　　　　　　　　　　　　　　　*Counsel for Defendants*

## **CERTIFICATE OF CONFERENCE**

Counsel for Defendants certify that they have complied with the meet and confer requirements in Local Rule CV-7(h). Plaintiff opposes the relief sought in this motion. Counsel for Defendants, Michael Knapp, Emily Newton, Kyla Snow, and Gary Feldon, and counsel for Plaintiff, Wen Fa, Daniel Ortner, and Glenn Roper, conferred by email on July 9, and by phone on July 12 to discuss Defendants' planned motion. The parties were unable to reach an agreement because Plaintiff does not believe a stay is warranted. The discussions have conclusively ended in an impasse, necessitating the Court's resolution of Defendants' request for a stay of proceedings.

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 12, 2021, a copy of the foregoing motion to stay proceedings was filed electronically via the Court's ECF system, which effects service on counsel of record.